# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PRIVILEGE UNDERWRITERS RECIPROCAL EXCHANGE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 17-CV-0661-CVE-JFJ ) |
| KYLE WEST, ANGELA WEST, and ARVEST BANK, | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court are Defendant Angela West's Motion for Summary Judgment with Brief in Support (Dkt. # 56), and Defendant Kyle West's Motion for Summary Judgment (Dkt. # 57). Plaintiff Privilege Underwriters Reciprocal Exchange (PURE) filed this interpleader action because it had received competing claims to insurance benefits payable under a homeowner's insurance policy. Angela West and Arvest Bank (Arvest)[1] argue that the insurance proceeds should be paid to Arvest, because the insured property was subject to a mortgage that requires the insurance proceeds to be paid to Arvest to cover the cost of repairs to the insured property. Dkt. # 55; Dkt. # 56. Kyle West claims that Angela West received the insured property as part of a divorce settlement, and she agreed to accept the property "as is" and it would be inequitable to allow her to recover the insurance proceeds. Dkt. # 57.

---

[1] Although Arvest filed an "opening brief" (Dkt. # 55), the last paragraph of which requests "summary judgment in its favor," Dkt. # 55, at 4, Arvest never filed a motion for summary judgment.

**I.**

Kyle and Angela West were married in 1993, and they purchased a home located at 10807 South Oswego Avenue (Oswego Residence) in Tulsa, Oklahoma. Dkt. # 56-1, at 2; Dkt. # 56-6. The Wests later separated and the divorce became final in October 2017. Dkt. # 56-1. On December 22, 2017, the state court issued a revised decision as to the division of property, and the Oswego Residence was awarded to Angela West. Dkt. # 56-2, at 6-7. Angela West received the Oswego Residence pursuant to a stipulation by the parties to the divorce, and she agreed to assume all debt associated with the Oswego Residence. Id. at 7; Dkt. # 56-3. The Oswego Residence was valued at $920,000 and was subject to two mortgages in the total amount of $843,859. Dkt. # 56-2, at 7.

The Oswego Residence is subject to a mortgage held by Arvest Bank, and one of the conditions of the mortgage is that the mortgagor obtain homeowner's insurance for the property. Dkt. # 56-6, at 4. In the event of damage to the Oswego Residence, the mortgage states that:

> Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

Id. at 5. Angela and Kyle West purchased a homeowner's insurance policy from PURE, and they are both named insureds on that policy. Dkt. # 56-10. The insurance contract contains a mortgage clause stating that "[i]f a mortagee is named in this policy, any covered loss under **dwelling** or **other**

**structures** coverages will be paid to the mortgagee and you, as interests appear." Dkt. # 55-1, at 1.

Angela West submitted a claim to PURE for damage to the roof of the Oswego Residence, and PURE agreed that the claim was a covered loss under the insurance policy. Dkt. # 56-3, at 1. Angela West states that she was unaware of any damage to the roof until near the time that she made the claim, and the PURE adjustor used the date of the most recent hail storm as the basis for the claim. Dkt. # 61-4. PURE's records show that it received notice of the claim on August 7, 2017, but the policy was cancelled due to non-payment on February 7, 2017. Dkt. # 61-1, at 1. Kyle and Angela West dispute who was responsible for paying the insurance premiums during the divorce proceedings, but it is undisputed that PURE reinstated the policy and has agreed to pay the claim. James Haley, a vice-president of Arvest, states that Arvest and the Wests have not otherwise agreed in writing as to the disposition of the insurance proceeds, and Arvest has determined that the repairs are economically feasible and that its security is not lessened. Dkt. # 46-1, at 2. Kyle West has made a claim for the insurance proceeds, and Angela West claims that he does not intend to use the insurance to repair the roof of the Oswego Residence. Dkt. # 56-3. PURE filed this interpleader action due to the competing claims of Angela West, Kyle West, and Arvest to the insurance proceeds, and the parties agree that the full amount of the insurance proceeds have been deposited into the registry of the Court. See Dkt. ## 4, 8, 16, 25.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Angela West and Arvest argue that the insurance proceeds should be paid to Arvest for disbursement to cover the cost of repair to the insured property. They rely on the mortgage agreement under which the parties agreed that Arvest had the right to hold any insurance proceeds

4

paid for the purpose of repairing or restoring the insured property. See Dkt. # 56-6, at 5. Kyle West argues that Angela West accepted the Oswege Residence in "as is" condition as part of the property division in the divorce proceedings, and she has no claim to the insurance proceeds. Dkt. # 57, at 2. He further claims that the "as is" value of the Oswego Residence exceeds the value of Arvest's mortgage, and "Arvest is fully protected and has no higher claim to the proceeds."[2] Id. at 2.

PURE does not deny that it is obligated to pay for the property damage claim, and it has deposited the insurance proceeds with the Court for distribution to the appropriate party. The insurance contract contains a mortgage clause stating that "[i]f a mortagee is named in this policy, any covered loss under **dwelling** or **other structures** coverages will be paid to the mortgagee and you, as interests appear." Dkt. # 55-1, at 1. Arvest is listed as the mortgagee on the declarations page of the insurance policy. Dkt. # 55-2, at 2. The mortgage agreement between Arvest and the Wests also contains language specifically addressing the disposition of insurance proceeds received for the purpose of repairing or restoring the Oswego Residence. Unless Arvest and the Wests specifically agreed in writing, any insurance proceeds obtained for the purpose of repairing or restoring the home shall be applied to the restoration of the property, and Arvest "shall have the right to hold such insurance proceeds until [Arvest] has had an opportunity to inspect such Property to ensure the work has been completed to [Arvest's] satisfaction." Dkt. # 56-6, at 5. Haley, a vice-president of Arvest, states that Arvest and the Wests have not otherwise agreed in writing as to the

---

[2] The Court has reviewed Kyle West's briefing (Dkt. ## 57, 62), and he does not cite any legal authority in support of his arguments. The Court will consider Kyle West's arguments, but he is represented by counsel and the Court will not conduct legal research or construct arguments on his behalf.

5

disposition of the insurance proceeds, and Arvest has determined that the repairs are economically feasible and that its security is not lessened. Dkt. # 46-1, at 2.

Tenth Circuit and Oklahoma Supreme Court precedent clearly support Arvest's argument that it has a superior claim to the insurance proceeds. The Oklahoma Supreme Court has explained that homeowner's insurance is a personal contract between insurer and insured, and the insurance does not attach to or run with title to the real property. Hensley v. State Farm Fire & Casualty Co., 398 P.3d 11, 19 (Okla. 2017). However, "[o]ne consequence of this principle is that a mortgage usually has a provision requiring a mortgagor to obtain insurance to protect a mortgagee's interest." Id. at 20. When an insurance policy contains such a provision, Oklahoma follows the general rule that a mortgage clause in an insurance policy "creates a separate contract of insurance in favor of the mortgagee which cannot be defeated by acts of the insured," and the mortgagee is entitled to recover the insurance proceeds up to the amount of the outstanding mortgage debt. First State Bank of Oklahoma v. State Farm Fire and Casualty Co., 840 P.2d 1267, 1268 (Okla. 1992). Interpreting Oklahoma law, the Tenth Circuit has found that a mortgagee has an equitable lien on insurance proceeds to the extent of the mortgagor's indebtedness when the mortgagor promises to insure a premises against property damage. Brown v. First Nat'l Bank of Dewey, 617 F.2d 581, 583 (10th Cir. 1980).

In this case, the Wests purchased homeowner's insurance from PURE for the Oswego Residence, and there is no dispute that Arvest required the Wests to purchase this insurance as a condition under the mortgage agreement. The mortgage agreement gives Arvest the right to hold any insurance proceeds for damage to the insured property, ensure that repairs are performed, and disburse payments after the repairs are completed. Dkt. # 56-6, at 5. The insurance contract

6

between PURE and the Wests also states that any payment for a covered loss under the "dwelling" coverage provided by the policy is payable to "the mortgagee and you . . . ." Dkt. # 55-1, at 1. PURE agreed to pay a claim for damage to the roof of the Oswego residence, and these funds are for the "restoration or repair" of the property. The insurance proceeds do not exceed the amount that Angela West owes to Arvest, and Arvest states it has not otherwise agreed in writing that the insurance proceeds should be paid directly to Angela or Kyle West. Dkt. # 46-1, at 2.

The Court finds that the insurance proceeds should be paid to Arvest for the purpose of repairing or restoring the Oswego Residence under the terms of the mortgage agreement and the insurance policy. Kyle West argues that Angela West agreed to accept the Oswego Residence in "as is" condition and she has no claim to the insurance proceeds. Dkt. # 57, at 2. He could also be arguing that the insurance proceeds are marital assets and the state court should determine the proper beneficiary of the insurance proceeds. Dkt. # 62, at 1. The Court notes that Kyle West cites no legal authority of any kind in support of these arguments but, even if he had, his arguments are meritless. The Court has determined that Arvest has a superior claim to the insurance proceeds and that neither Angela nor Kyle West should directly receive the insurance proceeds. Thus, the insurance proceeds are not assets of either of the parties to the divorce, and the state court has no jurisdiction to determine if the insurance proceeds should be paid to either of the divorcing parties. Kyle West has not shown that he has any claim to the insurance proceeds, and the Court will direct the Court Clerk to disburse the interpled funds to Arvest.

**IT IS THEREFORE ORDERED** that Defendant Angela West's Motion for Summary Judgment with Brief in Support (Dkt. # 56) is **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that Defendant Kyle West's Motion for Summary Judgment (Dkt. # 57) is **denied**.

**IT IS FURTHER ORDERED** that the Court will direct the Court Clerk to disburse the full amount of the interpled funds to Arvest.

**DATED** this 27th day of August, 2018.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE